NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.M., R.M.,
A.M., P.M., and G.O.

No. 1 CA-JV 25-0177, 1 CA-JV 26-0002
(Consolidated)

FILED 07-06-2026

Appeal from the Superior Court in Maricopa County
No.  JD533703
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in
which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

**T H U M M A**, Judge:

**¶1**         Jesus Macias Jr., (Father) appeals from orders terminating his parental rights to five children. Because paternity was not established for one of the children, that order is vacated and remanded. Because Father has not otherwise shown error, the order terminating his parental rights to the other four children is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Father is the parent of P.M., A.M., R.M., M.M. and G.O.[1] In October 2020, DCS filed a dependency petition, alleging as to Father neglect, substance abuse and an inability to provide proper and effective parental care and control.[2] Later in October 2020, the court was informed that paternity was established for all children, except G.O. DCS had alleged a John Doe father for G.O., and in January 2021, after service by publication, the court found G.O. dependent as to John Doe.

**¶3**         In August 2021, after Father entered a no contest plea to the dependency allegations, the court found all five children dependent as to Father and adopted a family reunification case plan, with DCS to provide reunification services.

**¶4**         By October 2022, Father was being held in jail and the court ordered DCS to seek video visits between Father and the children. In March 2023, Father was sentenced to three years in prison for felony convictions. For the next few years, the court continued to order video visits, including makeup visits when they were missed. In August 2024, the court ordered DCS to work on having in-person visits if the facility where Father was being held allowed it. In December 2024, DCS told the court that Arizona Department of Corrections (DOC) issues were preventing Father from having visits. Father later indicated he was receiving virtual visits but wanted in-person visits. Father was then moved to a different prison facility, and visitation issues then continued.

---

[1] The caption has been amended to safeguard the child's identity pursuant to Administrative Order 2013-0001.

[2] Mother was also a party to the petition but is not involved in this appeal.

**¶5**            In June 2025, the court granted DCS' motion to change the case plan to severance and adoption. DCS' motion to terminate alleged, as statutory grounds for Father, substance abuse, length of felony sentence and 15-months time-in-care. *See* Ariz. Rev. Stat. (A.R.S) § 8-533(B)(3), (4), (8)(c) (2026).[3]

**¶6**            During the two-day severance adjudication hearing in October 2025, DCS informed the court that it would not proceed with G.O. until paternity could be established. On the second day, DCS requested the court to preserve the testimony and evidence as to G.O., pending paternity testing, and the court did so. In November 2025, the court granted the motion to terminate for all children except G.O., finding DCS proved by clear and convincing evidence all three statutory grounds alleged and proved by a preponderance of the evidence that termination would be in the children's best interests.

**¶7**            At a December 2025 status conference, DCS indicated Father's paternity of G.O. had been established. The court then ordered DCS to file an amended dependency petition. At the same status conference, however, the court later stated it was prepared to rule on the motion to terminate as to G.O. given the evidence provided at the October 2025 adjudication and would issue its ruling in due course.

**¶8**            The court then issued its ruling and, based on the evidence received at the October 2025 adjudication, terminated Father's rights to G.O. This court has jurisdiction over Father's timely appeals of these termination orders under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A), 12-2101(A) and Ariz. R.P. Juv. Ct. 601-03.

## DISCUSSION

**¶9**            As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground set forth in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted). This court views the evidence in the light most favorable to upholding the orders. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449 ¶ 12 (App. 2007).

## I.      Because Paternity Had Not Been Shown for G.O., the Juvenile Court Erred in Terminating Father's Parental Rights to G.O.

**¶10**          Father correctly argues that, because paternity had not been established by evidence offered at trial or by stipulation or motion, and because DCS did not file an amended dependency petition or motion to terminate, the termination of his parental rights to G.O. was error. At trial, DCS stated it could not proceed with termination as to G.O. until paternity was established. The next day, DCS asked the court to preserve the testimony as it related to G.O. The court then preserved the trial evidence as to G.O., indicating it would make its findings regarding termination after receiving evidence regarding paternity and making findings regarding paternity.

**¶11**          At the December 2025 status conference, DCS told the court that it had paternity testing evidence showing Father was the biological father of G.O. and that it would file an amended dependency petition and motion to terminate. Father's counsel responded that the paternity test results had not been reviewed, adding that "paternity does need to be established in order to proceed with making a dependency finding and a severance finding as well." The court then ordered DCS to file an amended dependency petition, which would also necessitate an amended motion to terminate. Despite those directives, three days later and before those amended filings were made, the court issued its ruling terminating Father's rights to G.O.

**¶12**          A parent is "the child's biological, adoptive, or legal mother or father whose rights have not been terminated." Ariz. R.P. Juv. Ct. 102(v). But a parent does not include a person whose paternity has not been established pursuant to A.R.S. § 25-812 or A.R.S. § 25-814. *See* A.R.S. § 25-814(A) (a man is presumed to be a child's father if the child was born within the marriage, genetic testing affirms paternity, he appears on the birth certificate, or the parties acknowledge paternity by a notarized or witnessed statement).

**¶13**          DCS concedes that paternity must be resolved "before the court determines dependency[,]" unless paternity is irrelevant to the

dependency petition. *See In re G.R.*, 255 Ariz. 444, 448 ¶¶ 22-23 (App. 2023). Here, Father's paternity was relevant to the dependency petition, with each of the allegations against Father requiring a finding that he was a parent. *Id.* Moreover, DCS' dependency petition (which was not amended) alleged (1) paternity had not been established as to G.O. and (2) named a John Doe father for G.O. And at DCS' request, in January 2021, the court found G.O. dependent as to John Doe.

¶14 On the record presented, the issue of Father's paternity was not properly asserted in an amended dependency petition and an amended motion to terminate, and Father did not consent (affirmatively, by action or otherwise) to join that issue. Moreover, the court lacked the evidence to adjudicate G.O. dependent as to Father, or terminate Father's parental rights to G.O., because it did not give the parties an opportunity to address whether Father was G.O.'s parent. Accordingly, the termination ruling as to G.O. is vacated and the matter is remanded for an evidentiary hearing on the paternity issue and any further proceedings deemed necessary to resolve whether Father's parental rights to G.O. should be terminated. s.

## II. The Juvenile Court Could Properly Find that DCS Made Diligent Efforts to Provide Appropriate Reunification Services, Including Visitation Between Father and the Children.

¶15 Citing *Troxel v. Granville*, 530 U.S. 57 (2000), Father asserts "DCS must make diligent efforts to preserve the family by providing services to assist parents in maintaining a bond with their children." To do so, Father argues DCS must "initiate measures designed to address an incarcerated parent's desire to maintain a parent-child relationship. At bottom . . . DCS 'has a responsibility to assist parents, incarcerated or not, who face termination of their rights.'" Father alleges DCS failed to discharge that obligation, and that he was "repeatedly denied visits, in person and virtual, as well as telephone contact with his children." Father also asserts the court erred in finding DCS made a diligent effort to provide him with appropriate reunification services.

¶16 Although services for a parent in prison may be more limited, DCS is obligated to make reasonable efforts to provide reunification services, if requested by the incarcerated parent and if providing the services will not endanger the child. *See Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 581–82 ¶¶ 18, 21 (2021). DCS must "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the

parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 50 (App. 2019) (citation omitted). The juvenile court is to "consider the totality of the circumstances when determining whether DCS has made diligent efforts." *Id.* at ¶ 49. Although there were issues with Father's visitation, the trial record supports the juvenile court's finding that DCS made diligent efforts to provide Father with appropriate reunification services, including visitation.

**¶17**        The court's 40-page minute entry detailing the services provided to Father will not be repeated here. During the lengthy history of this case, DCS provided Father a variety of services. Father was provided substance abuse treatment and drug testing and counselling, but his participation was inconsistent and he tested positive for drugs, including methamphetamine, when he did participate. Father continued to test positive for drugs despite being offered services by DCS including testing and treatment. The court found Father's excuse for failing to participate (that he was working) to not be credible and that Father was selling illegal drugs instead of attending substance abuse classes.

**¶18**        DCS provided Father services through a Nurturing Parent Program, but he refused or rejected the services. Father's psychological evaluation revealed a poor prognosis for him to parent given lack of insight, substance use and untreated trauma. The court noted two counseling service referrals were closed out when Father failed to engage.

**¶19**        Before being incarcerated, Father participated in visits facilitated by DCS. After he was taken into custody, visits were both remote and in-person, often once a month. A DCS case aide testified that Father had consistent visits with the children, but there were issues with DOC not providing the necessary information for remote visits. Visits also were complicated because Father kept getting transferred from one DOC facility to another. The case aide testified that DCS took all the steps necessary to make visits happen. A parenting time coordinator testified similarly, adding that the virtual link was not always available but DCS attempted "every week" to provide Father visits. The DCS case specialist conceded, however, that DOC communication issues caused interruptions with visits.

**¶20**        While in custody from March 2023 to November 2025, Father moved facilities 14 times, which complicated visits. Some of those moves, however, were the result of Father violating rules while in custody. Ultimately, the court concluded that the sporadic visitation was not the

fault of DCS but, instead, resulted from Father's conduct in custody, issues with DOC and the number of placements for the five children.

**¶21** After detailing the services provided to Father by DCS, the court concluded that DCS had made reasonable and diligent efforts to provide appropriate reunification services, and that Father did not meaningfully participate in those services to facilitate a change in his ability to safely parent. On this record, Father has shown no error in the court's findings. *See Jessie D.*, 251 Ariz. at 582 ¶ 21.

### III. The Juvenile Court Did Not Abuse Its Discretion by Failing to Appoint a Guardian for the Children as Opposed to Ordering Termination.

**¶22** Father argues DCS "failed to reasonably address the option of guardianship for these children." The record shows that DCS considered a guardianship, but the potential guardian was denied as a placement. Although citing a Florida case to support his argument that guardianship is the least restrictive means to accomplish the goal of protecting children, *A.H. v. Dep't of Child. & Fams.*, 144 So. 3d 662 (Fla. Dist. Ct. App. 2014), Father concedes that case is not binding on this court. Moreover, it is inapplicable here as it involved the termination of a permanent guardianship, not whether a permanent guardianship was appropriate in the first instance. *A.H.*, 144 So. 3d at 664.

**¶23** Although a permanent guardian may be an appropriate alternative to termination of parental rights, a permanent guardianship is not a prerequisite to termination, particularly where no ready, willing and able potential guardian has been identified. *See Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477 ¶¶ 27-28 (2022). Here, the record indicates guardianship was considered but no eligible potential guardian was identified. On this record, Father has shown no error in the court's considering a potential guardian.[4]

---

[4] Father argues the juvenile court's findings regarding the substance abuse statutory ground were not supported by substantial evidence in the record. The juvenile court, however, also found that DCS proved by clear and convincing evidence the length of felony sentence and time in care statutory grounds. Father does not challenge those findings on appeal, which appear to be supported by substantial trial evidence. Accordingly, this court need not address Father's challenges to the substance abuse findings. *See Jesus M.*

**CONCLUSION**

**¶24** The order terminating Father's parental rights as to G.O. is vacated and remanded for further consideration. The order terminating Father's parental rights to his other children is affirmed.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

---

*v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002) (citing cases) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").